Filed 5/22/23  FN Logistics v. The Compliance Firm CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| FN LOGISTICS, LLC, | B321832 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 22STCV01443) |
| v. | |
| THE COMPLIANCE FIRM LLC, | |
| Defendant; | |
| BRITTANY A. STILLWELL, | |
| Movant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Mel Red Recana, Judge.  Affirmed.

Brittany A. Stillwell, in pro. per., for Movant and Appellant.

Nixon Peabody LLP, Staci Jennifer Trager and Dale A. Hudson for Plaintiff and Respondent.

————————————

In 2020, clothing distributor and plaintiff FN Logistics, LLC (FNL) hired defendant The Compliance Firm LLC, doing business as Compliant Care Staffing (TCF), to provide onsite COVID-19 testing for FNL's warehouse employees. Dissatisfied with TCF's performance, FNL terminated the parties' relationship and, in April 2021, sued in United States District Court to recoup money paid to TCF. (*FN Logistics, LLC v. The Compliance Firm LLC* (C.D.Cal. 2021, No. 2:21-cv-3312 GW-MARx) 2021 WL 1511739 (the First Federal Action).)

In August 2021, TCF's sole member, appellant Brittany A. Stillwell, filed a complaint in the same federal court alleging among other things that the First Federal Action lacked subject matter jurisdiction. (*Stillwell v. Fashion Nova*, LLC (C.D.Cal. 2021, No. 2:21-cv-07040-GW-MARx) 2021 WL 6496836 (the Second Federal Action).) FNL then dismissed the First Federal Action without prejudice and, in January 2022, refiled its complaint in the Los Angeles County Superior Court, which is the action underlying this appeal.

The trial court entered default against TCF after it did not appear in the action. FNL requested entry of default judgment against TCF in the amount of $363,842.39, representing breach of contract damages totaling $363,260.35 and costs of $582.04. While FNL's request for a default judgment was pending, Stillwell sought to intervene in the action pursuant to Code of Civil Procedure section 387.[1] The trial court denied Stillwell's motion for leave to file an answer and cross-complaint in

---

[1] All unspecified statutory references are to the Code of Civil Procedure.

2

intervention and entered default judgment against TCF as requested.

Stillwell now appeals from the trial court's order denying her leave to intervene. She argues she is entitled to intervene as a matter of right because she is a necessary party and because disposition of the action without her would impair or impede her interests. She further argues the trial court abused its discretion in denying her leave for permissive intervention. At their core, Stillwell's arguments for intervention seek to bootstrap her ownership of TCF into a basis to defend its interests despite Stillwell not being an attorney. As the law does not permit this, we reject her arguments and affirm.

## BACKGROUND

### A. Factual Summary

FNL operates a warehouse in Santa Fe Springs, California, from which it distributes clothing sold by the retail company Fashion Nova, LLC (Fashion Nova). In November 2020, FNL sought to provide COVID-19 testing services for its warehouse employees. According to FNL's complaint, TCF purported to provide healthcare consulting and "affordable and efficient onsite C[OVID]-19 testing." FNL contracted with TCF to provide COVID-19 testing. After some time, FNL determined TCF was "unqualified and unauthorized to provide C[OVID]-19 testing at FNL's facility." On January 6, 2021, FNL terminated the parties' relationship.

### B. Procedural History

#### 1. *The Federal Matters*

On April 16, 2021, FNL filed the First Federal Action. The complaint alleged Stillwell was the sole member of TCF and

resided in Nevada, purportedly giving rise to diversity jurisdiction in the district court. FNL did not name Stillwell as a defendant and did not otherwise refer to Stillwell by name in its complaint. FNL asserted 13 claims, including rescission, conversion, breach of fiduciary duty, violation of Business and Professions Code section 17200 et seq., misrepresentation, professional negligence, breach of contract, and breach of the implied covenant of good faith and fair dealing against TCF. TCF did not appear in the matter, and on July 15, 2021, the clerk entered a default judgment against TCF in the amount of $363,260.35.

On August 31, 2021, Stillwell, appearing in pro per, filed the Second Federal Action naming as defendants FNL, Fashion Nova, Richard D. Saghian (FNL's and Fashion Nova's chief executive officer), Erica A. Meierhans (Fashion Nova's general counsel and chief compliance officer), Nixon Peabody LLP and Nixon Peabody partner Staci J. Riordan (FNL's counsel of record in the First Federal Action), Intrivo Diagnostics, Inc. (Intrivo), and two of Intrivo's individual co-owners.[2] Stillwell alleged the case was a "quasi-whistleblower action," and, in a 479-page complaint containing over 1,300 numbered paragraphs, asserted 24 causes of action, including forced labor, trafficking, breach of contract, breach of fiduciary duty, fraud, civil racketeering, professional negligence, interference with prospective economic advantage, infliction of emotional distress, and declaratory relief. Stillwell's complaint also alleged that TCF, FNL, and Fashion Nova entered into several agreements including a nurse staffing

---

[2] FNL provided Intrivo with 8,320 unused COVID-19 antigen tests that it purchased from TCF.

4

agreement and an employee leasing agreement, under which "[Stillwell]'s company, [TCF] leased employees to Fashion Nova and was eventually hired to provide COVID-19 testing to Fashion Nova's nearly 10,000 employees, contractors, and vendors." Fashion Nova also paid $392,448 to TCF for 12,800 COVID-19 antigen tests, and "[i]n January 2021, Fashion Nova owed [TCF] over $500,000.00." Stillwell further alleged that she had discovered discrepancies and errors in FNL's and Fashion Nova's classification of employees, reporting of COVID-19 positive cases among its employees, and reporting of Cal/OSHA recordable workplace injuries.

On October 1, 2021, FNL, Fashion Nova, Nixon Peabody LLP, Saghian, Meierhans, and Riordan (collectively, Defendant Movants) filed a motion to dismiss the Second Federal Action under Federal Rules of Civil Procedure, rules 8(a)(2), 12(b)(1), and 12(b)(6), and a special motion to strike under section 425.16. In its tentative ruling, the district court concluded the 20th and 21st causes of action for declaratory relief relating to whether the district court in the First Federal Action had diversity jurisdiction arose directly from the First Federal Action, and thus were likely protected by the litigation privilege (Civ. Code, § 47(b)). It ordered the parties to meet and confer on that issue. It also indicated it would likely dismiss all other causes of action in Stillwell's complaint with leave to amend because the "size and unwieldiness" of the complaint violated rule 8(a)(2) of the Federal Rules of Civil Procedure, which requires "a short and plain statement of the claim." (*Ibid.*)

According to FNL, following the meet and confer it agreed to set aside the default judgment and dismiss TCF without

prejudice from the First Federal Action, conditioned on being able to refile its complaint in state court.

On November 18, 2021, the district court granted in part the special motion to strike, striking the 20th and 21st causes of action, and otherwise dismissed the complaint with leave to amend.

On December 9, 2021, Stillwell filed a first amended complaint in the Second Federal Action, alleging seven causes of action for forced labor (first through third causes of action), trafficking (fourth cause of action), civil racketeering (fifth and sixth causes of action), and intentional infliction of emotional distress (seventh cause of action).  Defendant Movants filed a motion to dismiss, a special motion to strike, and a motion for attorney fees under section 425.16, subdivision (c).

On March 30, 2022, the district court issued an order and judgment in which it found that Stillwell failed to state a claim pursuant to Federal Rules of Civil Procedure, rule 12(b)(6) for the first through sixth causes of action and granted Defendant Movants' motion to dismiss those claims with prejudice.  It then declined to exercise supplemental jurisdiction over the seventh cause of action for intentional infliction of emotional distress, and dismissed that claim without prejudice.  The district court also granted Defendant Movants' motion for attorney fees pursuant to section 425.16, subdivision (c).

Stillwell appealed the judgment in the Second Federal Action to the Ninth Circuit.  On March 22, 2023, one day after Stillwell filed her reply brief in this appeal, the Ninth Circuit affirmed the district court's judgment dismissing and striking Stillwell's complaint and amended complaint.  (*Stillwell v.*

6

*Fashion Nova, LLC* (9th Cir., Mar. 22, 2023, No. 22-55312) 2023 WL 2596823.)[3]

2.    *The Superior Court Litigation*

On January 12, 2022, FNL filed its complaint in the superior court.  It named only TCF as a defendant.  FNL alleged 11 causes of action against TCF, including causes of action for recission of its agreements with TCF, conversion, declaratory relief, intentional or negligent misrepresentation,  professional negligence, breach of contract, and breach of the implied covenant of good faith and fair dealing.  Each cause of action arose out of TCF's alleged failure to advise that FNL could not legally store or possess antigen tests and TCF's efforts to pass off its costs for building a COVID-19 testing site to FNL.  FNL alleged Stillwell was the only member of TCF and a California resident.  The complaint did not otherwise mention Stillwell by name, describing the events giving rise to the causes of action as occurring between Fashion Nova, FNL and TCF, only.

---

[3] The Ninth Circuit held, "In both of the anti-SLAPP motions, FNL met its initial burden to show that the stricken allegations and claims attacked allegations it made and positions it took in earlier-filed litigation, quintessential acts in furtherance of FNL's right to petition the courts.  [Citation.] Stillwell could not carry her burden to show a probability of prevailing on her claims because she could not overcome the California litigation privilege, which similarly protects allegations and claims made in court submissions." (*Stillwell v. Fashion Nova, LLC*, *supra*, 2023 WL 2596823 at p. *1.)  The Ninth Circuit also concluded the district court did not err in dismissing Stillwell's claims for forced labor or trafficking as she failed to allege essential elements relating to such claims. (*Id*. at pp. *1-*2.)

TCF did not appear in the action, and on March 1, 2022, the trial court entered default against TCF. On March 30, 2022, FNL requested that the court enter a default judgment against TCF in the amount of $363,842.39 for its contractual damages and costs.[4]

On May 9, 2022, Stillwell filed a motion for leave to intervene in the action. She argued she was entitled to intervene because she had subrogation, property, and liberty interests that would be affected by the outcome of the action. In particular, she alleged she had personally guaranteed a loan for TCF in December 2020 so that it could pay the wages of employees it had leased to Fashion Nova and FNL; that a judgment against TCF could impair her ability to keep her nursing license and be admitted to the California State Bar and attract clients; and that "FNL's false allegations implicate[d] Stillwell's good name [and] reputation." She further argued that she was entitled to permissive intervention. In her motion, Stillwell asserted that "TCF's commercial insurer was still evaluating coverage for defending the [p]resent [a]ction[, and] . . . she was filing a motion to intervene in this action, because delays in TCF's insurance carrier to defend this suit, has adversely affected her interests."

Stillwell submitted a proposed answer in intervention and a proposed cross-complaint in intervention against FNL and Fashion Nova with her motion. Several general and specific denials in the proposed answer sought to explain why TCF should not be held liable on FNL's causes of action against TCF. The proposed answer also alleged the litigation privilege barred

---

[4] FNL did not seek to prove up or include damages for any of its non-contractual causes of action.

FNL's claim against TCF, and that "TCF was a covered entity," immune under the Public Readiness and Emergency Preparedness Act (42 U.S.C. §§ 247d-6d, 247d-6e). Stillwell also alleged she "incurred damages by reason of [FNL's] conduct, and [Stillwell] is entitled to a setoff and/or offset of any amount of monies owed to [FNL] by way of damages." In the proposed cross-complaint, Stillwell alleged causes of action for promissory fraud (inducing her to bind TCF to a joint venture agreement with Fashion Nova and FNL), breach of an oral "consultancy" agreement, breach of fiduciary duty, and negligent infliction of emotional distress. Neither the proposed answer nor the proposed cross-complaint included any allegations relating to loans Stillwell paid, made, or guaranteed for TCF's or FNL's benefit.

Stillwell also filed a declaration in support of her motion. She stated that, inter alia, she owned TCF, acted as TCF's agent when she entered into a joint venture agreement with Fashion Nova and FNL, occasionally worked as a sole proprietor when consulting for certain clients, and had guaranteed a loan for TCF in December 2020 to permit it to pay salaries of "[l]eased [e]mployees because [Fashion Nova and ]FNL refused to pay TCF pursuant to . . . agreements between Stillwell, TCF, FNL, and [Fashion Nova]." She also averred she "ha[d] subrogation, property, and liberty interests . . . related to the COVID-19 testing endeavors at [Fashion Nova and ]FNL."

On May 18, 2022, FNL opposed Stillwell's motion. It argued Stillwell's only interest in the action was as the owner and sole member of TCF, which was in default and had not retained counsel. Thus, Stillwell merely sought to defend the

9

interests of TCF "through the artifice of purporting to represent herself in pro per." (Italics omitted.)

On May 24, 2022, Stillwell filed her reply. In addition to arguing the court should grant intervention, she argued FNL never served its opposition on her, and therefore, the trial court should not consider it. She stated the failure of service "affected and hindered [her] opportunity to research case law to support some of her arguments in [her r]eply."

On June 6, 2022, the trial court granted Stillwell leave to file a supplemental reply brief five days before the hearing on the motion, which the court continued to June 13, 2022.[5] Thus, Stillwell's supplemental reply brief was due June 8, 2022.

Also on June 6, 2022, Stillwell filed a UCC Financing Statement (UCC 1) with the California Secretary of State, listing herself as the secured party and TCF as the debtor. She did not identify any document memorializing the purported loan, but described the collateral securing the loan as, in sum, all of TCF's present and future assets and interests, except for intellectual property, but including proceeds arising from intellectual property.

On June 7, 2022, Stillwell filed a UCC Financing Statement Amendment (UCC 3) with the California Secretary of State. The UCC 3 form stated the "[c]ollateral [was] amended to add: Effective December 31, 2020, [c]ollateral consists of

_____

[5] The trial court's order indicates the trial court continued the hearing on Stillwell's motion to June 20, 2022. However, the docket states the hearing was continued to June 13, 2022. Stillwell does not argue she believed the hearing was scheduled for June 20, 2022, and acknowledged in her supplemental declaration that the hearing was set for June 13, 2022.

10

[d]ebtor's right, title, and interests in, created, or arising out of: commercial tort claims involving FN Logistics, LLC and Fashion Nova, LLC; contract rights created or arising out [of] all contracts between FN Logistics, LLC and Fashion Nova, LLC; rights to payment of money from FN Logistics, LLC and Fashion Nova, LLC; and accounts receivable from FN Logistics, LLC and Fashion Nova, LLC." She then filed a "notice of lien" in the trial court, attaching the UCC 1 and UCC 3 forms.

On June 9, 2022, Stillwell filed an untimely supplemental reply brief and a supplemental declaration. She made two new arguments not raised in her initial motion. First, she argued that certain of FNL's tort allegations "warrant[ ] . . . piercing of the corporate veil," under the alter ego doctrine. Second, she argued she was a secured creditor of TCF. In her supplemental declaration Stillwell stated, "I am a secured creditor of TCF; and I have a lien on TCF's assets, which are the subject of the instant litigation. TCF owes me over $700,000.00 in compensation for services, and unpaid loans that I provided to TCF to cover the wages of the [j]oint [e]mployees TCF shared with [Fashion Nova]/FNL, and unpaid loans I made to TCF pursuant to TCF and [Fashion Nova]/FNL's COVID-19 testing endeavors. My lien could be jeopardized by the instant proceedings due to FNL's pending default judgement [*sic*] against TCF . . . ."

On June 15, 2022, following argument, the trial court denied Stillwell's motion for leave to intervene and issued a 16-page written order describing the reasons for its ruling. The trial court observed Stillwell's supplemental reply was untimely as it was filed on June 9, 2022 at 9:51 p.m. and had been due on June 8, 2022. Further, Stillwell improperly raised the alter ego and secured creditor arguments for the first time and submitted

11

new evidence in her supplemental declaration. The trial court entered default judgment in favor of FNL against TCF in the amount of $363,842.39.

Stillwell timely appealed.

## DISCUSSION

### A. Legal Standard for Intervention and Appellate Standard of Review

Section 387 allows for both mandatory and permissive intervention. A nonparty is entitled to mandatory intervention "if either of the following conditions is satisfied: [¶] (A) A provision of law confers an unconditional right to intervene. [¶] (B) The person seeking intervention claims an interest relating to the property or transaction that is the subject of the action and that person is so situated that the disposition of the action may impair or impede that person's ability to protect that interest, unless that person's interest is adequately represented by one or more of the existing parties." (§ 387, subd. (d)(1).)

A court may allow permissive intervention "if the person has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both." (§ 387, subd. (d)(2).) For permissive intervention, the nonparty must satisfy the following factors: "(1) the proper procedures have been followed; (2) the nonparty has a direct and immediate interest in the action; (3) the intervention will not enlarge the issues in the litigation; and (4) the reasons for the intervention outweigh any opposition by the parties presently in the action." (*Reliance Ins. Co. v. Superior Court* (2000) 84 Cal.App.4th 383, 386, quoting *Truck Ins. Exchange v. Superior Court* (1997) 60 Cal.App.4th 342, 346.)

12

A motion to intervene must be accompanied by a proposed complaint in intervention or a proposed answer in intervention that "set[s] forth the *grounds upon which the intervention rests*; i.e., the facts which show that intervention is a matter of right . . . , or the basis for permissive intervention . . . . [Citation.]"  (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2022) § 2:443.)  "The [proposed] intervenor's pleading (if it supports [the] plaintiff's claims or demands anything adverse to both a plaintiff and a defendant) is captioned 'Complaint in Intervention.' [Citations.]  [¶]  If the pleading supports [the] defendant in resisting [the] plaintiff's claims, it is captioned 'Answer in Intervention.' [Citation.]" (*Ibid*.)

"[A]n order denying intervention is appealable because 'it operates as a final determination against the intervenor and is appealable as a final judgment against him.  [Citations.]' [Citations.]"  (*Royal Indemnity Co. v. United Enterprises, Inc*. (2008) 162 Cal.App.4th 194, 202-203, italics omitted.)  We review an order denying leave to permissibly intervene under the abuse of discretion standard.  (*City and County of San Francisco v. State of California* (2005) 128 Cal.App.4th 1030, 1036 ["Because the decision whether to allow intervention is best determined based on the particular facts in each case, it is generally left to the sound discretion of the trial court"].)  "Under this standard of review, a reviewing court should not disturb the trial court's exercise of discretion unless it has resulted in a miscarriage of justice." (*Ibid*.)

The standard of review for an order denying mandatory intervention is unsettled, with some courts suggesting de novo review and others abuse of discretion.  (See *Turrieta v. Lyft, Inc.*

13

(2021) 69 Cal.App.5th 955, 976 [citing cases], review granted Jan. 5, 2022, S271721.) As explained below, we conclude that the denial of mandatory intervention was proper under either standard and, thus, we need not resolve which standard applies.

**B.     Stillwell May Not Intervene to Advance Arguments on Behalf of TCF**

"[A] corporation, unlike a natural person, cannot represent itself before courts of record in propria persona, nor can it represent itself through a corporate officer, director or other employee who is not an attorney." (*CLD Construction, Inc. v. City of San Ramon* (2004) 120 Cal.App.4th 1141, 1145; see also *Merco Constr. Engineers, Inc. v. Municipal* Court (1978) 21 Cal.3d 724, 727 ["the Legislature cannot constitutionally vest in a person not licensed to practice law the right to appear in a court of record in behalf of another person, including a corporate entity"].) Limited liability companies are no different; an individual representing any artificial entity created by law " 'is clearly engaged in the practice of law in a representative capacity.' " (*Caressa Camille, Inc. v. Alcoholic Beverage Control Appeals Bd.* (2002) 99 Cal.App.4th 1094, 1102.)

FNL argues Stillwell does not have any direct interests in the action but instead "is engaging in a transparent subterfuge, seeking to defend the interests of defendant TCF, whom she cannot legally represent, through the artifice of purporting to represent herself in pro per." (Italics omitted.) This argument is persuasive. Among other things, Stillwell acknowledges that she sought leave to intervene because TCF's insurer purportedly delayed issuing its coverage decision. Her proposed answer in intervention includes denials relating to TCF's liability, and the proposed cross-complaint in intervention asserts causes of action

14

to recover monies purportedly owed to TCF.  Thus, as we evaluate Stillwell's arguments, we remain mindful that we must focus on whether the proffered interests are hers or TCF's.

## C.    Mandatory Intervention

Stillwell's arguments for mandatory intervention claim that she meets the criteria for compulsory joinder under section 389, and further that she meets the criteria set forth in section 387.  We address each argument in turn.

### 1.    *Compulsory Joinder*

Stillwell first argues she has an unconditional right to intervene under section 387, subdivision (d)(1)(A) because she meets the criteria for compulsory joinder provided in section 389, subdivision (a)(1), (a)(2)(i), and (a)(2)(ii).  As relevant here, section 389, subdivision (a) states a person "shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest."

#### a.    *Stillwell is not a necessary party under section 389, subdivision (a)(1).*

Stillwell argues the parties cannot obtain complete relief without her because she was "an active participant in the alleged tort[s] asserted in the instant action" and "the only person [who] represent[ed] TCF during all COVID-19 related contract negotiations."  (Italics omitted.)

15

A plaintiff has a right to frame its causes of action, and choose the defendant(s) it names and does not name, when filing a lawsuit. "The 'complete relief' clause [of section 389, subdivision (a)(1)] 'requires joinder when nonjoinder precludes the court from effecting relief not in some overall sense, but between *extant parties*. In other words, joinder is required only when the absentee's nonjoinder precludes the court from rendering complete justice *among those already joined*. . . . The "complete relief" clause does not contemplate other potential defendants, or other possible remedies.' [Citation.]" (*Countrywide Home Loans, Inc. v. Superior Court* (1999) 69 Cal.App.4th 785, 793-794.)

Here, Stillwell has not demonstrated that the parties to the litigation—FNL and TCF—could not obtain complete relief between them without Stillwell's involvement as a party. FNL alleged TCF entered into agreements and other business transactions with it, and that TCF breached those agreements. FNL sought recovery from TCF and not Stillwell based on those contracts and transactions; FNL did not allege that Stillwell was a party to any contract or agreement, nor did it allege Stillwell individually committed any tort against FNL. Thus, FNL could (and indeed did) obtain complete relief on its claims without Stillwell's involvement. By the time of the hearing on the intervention motion, FNL had made clear it was seeking a default prove-up only on the contract claims against TCF such that Stillwell's self-professed involvement in any alleged torts was no longer relevant.

As for TCF, it had defaulted and asserted no counterclaims or affirmative defenses. While this occurred because TCF was unrepresented, allowing Stillwell to present argument on behalf

16

of TCF would run afoul of the "long-standing common law rule of procedure [that] a corporation, unlike a natural person, cannot represent itself before courts of record in propria persona, nor can it represent itself through a corporate officer, director or other employee who is not an attorney." (*CLD Construction, Inc. v. City of San Ramon*, *supra*, 120 Cal.App.4th at p. 1145.)

Stillwell next suggests complete relief cannot be obtained without her because TCF is her alter ego. She notes she was the only person who acted as TCF's agent in its negotiations and agreements with FNL and, thus, should have been identified as a joint tortfeasor in the complaint. Stillwell did not raise this theory until her untimely supplemental reply brief in the trial court, and has therefore forfeited it. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.) Even if the issue was not forfeited, we find it meritless. First, it would be a significant procedural aberration to permit someone allied with an unrepresented corporate defendant to intervene to attempt piercing its corporate veil when the plaintiff has made no such argument and sought no such relief. Second, Stillwell's alter ego allegations went only to FNL's tort claims, and the default prove-up brief already on file with the court made clear FNL was seeking recovery solely on its contract claims and not any of its tort claims. Third, even if the alter ego claims related to causes of action still at issue, Stillwell's allegations that she was the only member of TCF and negotiated on its behalf did not warrant piercing the corporate veil. (See, e.g., *Carlesimo v. Schwebel* (1948) 87 Cal.App.2d 482, 487.)

In sum, the trial court did not err in finding it could afford complete relief to the parties within the meaning of section 389, subdivision (a)(1) in Stillwell's absence.

17

b.    *Stillwell is not a necessary party under section 389, subdivision (a)(2)(i).*

Stillwell claims for the first time on appeal that she has an interest in the underlying litigation because "[i]f [she] receives a favorable judgment in the [instant action], it will directly and materially affect the [Second Federal Action]." Having not made this argument in the trial court, it is forfeited here. Basic fairness lies at the heart of this rule—we "are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider." (*JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 178.) Even if we considered this argument, intervention in this matter could not affect the Second Federal Action as that case no longer exists; it was dismissed and the dismissal affirmed by the Ninth Circuit.

Stillwell also contends that if she "is not joined, then she will be unjustly precluded . . . from asserting claims against FNL and will be forced to pay a judgement [sic] for FNL's attorney fees that was fraudulently procured [in the Second Federal Action]." Stillwell does not provide any explanation as to why she, individually, cannot assert any remaining claims she has against FNL in a separate action; she remains free to do so. Nor could intervention in this action affect an entirely separate federal matter in which Stillwell had the opportunity to participate, and which now has a final judgment. We perceive no error in denying intervention on this ground.

c.    *Stillwell is not a necessary party under section 389, subdivision (a)(2)(ii).*

Section 389, subdivision (a)(2)(ii) requires joinder of a party if nonjoinder would "leave any of the persons already parties

18

subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of [her] claimed interest." (*Ibid*.) Stillwell does not suggest that adjudication without her will result in double, multiple, or inconsistent obligations between TCF and FNL, nor do we see how she could. Rather, she argues intervention is the more efficient option as she would otherwise have to file a complaint against FNL in a separate action and request to have the matters related and consolidated. Section 389, however, does not mandate intervention for such claimed efficiency. Thus, Stillwell has not demonstrated that she is a necessary party pursuant to section 389, subdivision (a)(2)(ii).[6]

_____

[6] Stillwell argues that dismissal of the action under section 389, subdivision (b)—which permits dismissal if the absent nonparty is indispensable and cannot be joined—would prejudice her. Because Stillwell has not demonstrated that she is a necessary party, and the superior court action was not dismissed but instead resolved by a default judgment, we need not consider this argument. However, as part of her argument, Stillwell contends FNL failed to comply with section 474's requirements of naming Doe defendants because FNL purported to sue Does 1 through 10, but did not state "Doe allegations" or substitute Stillwell for a Doe defendant. FNL has not attempted to replace a Doe defendant with Stillwell, and thus she has no standing to make this argument. Further, she does not provide any authority or argument supporting the proposition that FNL had an obligation to name her as a Doe defendant.

Stillwell also states "the claims raised in [her] [p]roposed [c]ross-[c]omplaint are compulsory under [section] 426.30, because they arise out of the same transactions and occurrences as the causes of action alleged in the FNL [c]omplaint." Stillwell does not provide any reasoned analysis or citations

19

2. *Stillwell Does Not Have a Sufficient Interest in the Property or Transaction that Is the Subject of the Action to Warrant Mandatory Intervention*

Stillwell next argues she had a right to intervene pursuant to section 387, subdivision (d)(1)(B) because she has interest relating to the property or transaction that is the subject of the action and that she is so situated that the disposition of the action may impair or impede her ability to protect that interest. (§ 387, subd. (d)(1)(B).) She claims to have property, subrogation, and liberty interests at issue in the action.

"Not every interest in the outcome of litigation gives to its possessor the right to intervene in the lawsuit. 'The interest . . . must be direct and not consequential, and it must be an interest which is proper to be determined in the action in which the intervention is sought.' [Citation.]" (*Continental Vinyl Products Corp. v. Mead Corp.* (1972) 27 Cal.App.3d 543, 549 (*Continental Vinyl*).) "An interest is consequential and thus insufficient for intervention when the action in which intervention is sought does not directly affect it although the results of the action may indirectly benefit or harm its owner." (*Id.* at p. 550; see *People ex rel. Rominger v. County of Trinity* (1983) 147 Cal.App.3d 655, 660 ["the interest in the litigation 'must be . . . of such a direct and immediate character that the intervener will either gain or lose by the direct legal operation and effect of the judgment' "].) "Determination that an interest is direct and not consequential does not of itself establish the right to intervene. The interest

_____

demonstrating this is so, and we consider this argument forfeited. (*Citizens for Positive Growth & Preservation v. City of Sacramento* (2019) 43 Cal.App.5th 609, 636.)

must be one 'which is proper to be determined in the action in which the intervention is sought.' [Citation.]  The court ruling upon the motion to intervene must balance the desirability of intervention to protect a direct interest against the normal right of the original parties to the litigation to 'conduct their lawsuit on their own terms' and the potential of unduly extending the litigation.  [Citation.]" (*Continental Vinyl, supra*, at p. 552.)

### a.    *Property Interests*

On appeal, Stillwell does not identify her alleged property interests at issue in the action.  To the extent such interests concern the economic impact of the litigation on her company TCF, we observe that, "Absent some special circumstance, a shareholder has a consequential but not direct interest in the outcome of litigation involving the corporation." (*Continental Vinyl, supra*, 27 Cal.App.3d at p. 553.)  Stillwell's claim of a property interest therefore does not support intervention.

### b.    *Subrogation Interests*

Stillwell claims she is entitled to intervene in this action as a result of "subrogation interests"[7] arising from a loan she made to TCF to pay wages of TCF and FNL's joint employees, a loan to TCF that she guaranteed for the same purpose, and her payment

---

[7] " 'Subrogation is defined as the substitution of another person in place of the creditor or claimant to whose rights he or she succeeds in relation to the debt or claim.  By undertaking to indemnify or pay the principal debtor's obligation to the creditor or claimant, the "subrogee" is equitably subrogated to the claimant (or "subrogor"), and succeeds to the subrogor's rights against the obligor. . . .' [Citation.]" (*Pulte Home Corp. v. CBR Electric, Inc.* (2020) 50 Cal.App.5th 216, 228, italics omitted.)

21

of TCF's loans made by other creditors. She also claims providing or guaranteeing such loans "give[s] rise to her intervention under Labor Code [section] 3852." We conclude the trial court did not err in finding Stillwell's purported subrogation interests were insufficient to warrant intervention.

First, we observe neither of Stillwell's proposed intervention pleadings includes any allegations relating to any loans. Nor do they allege that TCF, FNL, or Fashion Nova owe her any obligation as a result of the loans she claims to have paid, made, or guaranteed; or that she is entitled to reimbursement from any party for her part in ensuring payment of the joint employees' wages. Also, neither of the proposed pleadings makes any mention that she is a secured creditor of TCF or includes allegations aimed at protecting her security interests. Thus, Stillwell failed to "set forth *the grounds upon which the intervention rests*; i.e., the facts which show that intervention is a matter of right . . . , or the basis for permissive intervention" in her proposed pleadings (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra*, § 2:443), and the trial court did not err in rejecting proposed pleadings that bore no relation to the arguments in her motion. Nor do Stillwell's motion to intervene or her appellate briefing adequately describe the nexus between any of her claimed subrogation interests and a property or transaction at issue in the action.

Second, "an unsecured creditor of a defendant who will be rendered unable to pay the debt if he loses a lawsuit is held to have only a consequential interest not justifying intervention in the litigation." (*Continental Vinyl*, *supra*, 27 Cal.App.3d at p. 550.) Thus, that Stillwell made loans to TCF, guaranteed

loans others made to TCF, or paid off debts on TCF's behalf does not justify intervention.

Third, Stillwell belatedly argued in the trial court that she was a secured creditor of TCF and submitted a supplemental declaration reiterating this assertion in a conclusory fashion. The trial court declined to consider this evidence and argument because it was untimely and deprived FNL of an opportunity to respond. We also decline to consider this argument because FNL did not have an adequate opportunity to respond, and whether Stillwell is a secured creditor would require this court to make a factual determination in the first instance without a complete record. (*JRS Products, Inc. v. Matsushita Electric Corp. of America, supra,* 115 Cal.App.4th at p. 178.)

Fourth, having failed to raise any argument under Labor Code section 3852 in the trial court, Stillwell has forfeited it. (See *Perez v. Grajales* (2008) 169 Cal.App.4th 580, 591-592 ["arguments raised for the first time on appeal are generally deemed forfeited"].) Even if we considered Stillwell's argument, Labor Code section 3852 is inapposite. Stillwell argues she is entitled to intervention because "[a]ny employer who pays, or becomes obligated to pay compensation . . . may likewise make a claim or bring an action against the third person." (Lab. Code, § 3852.) However, Labor Code section 3852 (found in Division 4 of the Labor Code, which is entitled "Worker's Compensation and Insurance") concerns "an employer's right to seek reimbursement from a third party for *workers' compensation benefits* that the employer is legally obligated to provide." (*Barme v. Wood* (1984) 37 Cal.3d 174, 180, italics added; see Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra,* § 2:410 ["An employer who has paid *workers' compensation benefits* to an employee

injured on the job has the *right* to intervene in the employee's lawsuit against the person causing such injury. Having paid such benefits, the employer has a subrogation *interest in the employee's cause of acti*on, and any judgment rendered in his absence might impair that interest"].) Here, Stillwell has never claimed to pay workers' compensation benefits; nor is this matter an employee's lawsuit against Fashion Nova or FNL. Thus, Labor Code section 3852 has no application here.

Fifth, turning to Stillwell's guarantee of a loan to TCF, we agree with the trial court that Stillwell has not demonstrated a sufficiently direct interest that would warrant intervention. Stillwell has not alleged anything about the guarantee in her proposed intervention pleadings. Nor has she articulated how the guarantee relates to the property or transaction at issue in the litigation or how disposition of the action would impair or impede her ability to protect her interests arising out of that guarantee. To the extent her interest is that she may become liable on the guarantee because a judgment against TCF would deplete its assets to a point where it would default on the loan, such an interest is consequential and not direct. Thus, this alleged interest does not satisfy the requirements for mandatory intervention under section 387, subdivision (d)(1)(B).

c. *"Liberty" Interests*

Stillwell argues FNL's complaint "implicitly attacks [her] professional reputation and competence, despite not mentioning her name." Stillwell asserts that she "has an interest in her professional reputation and FNL's lawsuit sullies that reputation." She asserts that interest is "a *liberty interest* that triggered due process protections," and that "intervention is the process due here."

24

The trial court observed that *Simpson Redwood Co. v. State of California* (1987) 196 Cal.App.3d 1192 holds harm to reputation may serve as a basis for intervention if there is a substantial probability the proposed intervenor's interests will be affected. (*Id*. at p. 1201.) In that case, the proposed intervenor had worked for decades to acquire redwood forests for donation to state and federal parks. A lumber company then claimed ownership of some donated parcels and brought a quiet title action against the state. (*Id*. at p. 1196.) The appellate court noted that, "If property acquired by donation in an effort to create and preserve a park is privately exploited, the impact upon [the proposed intervenor]'s reputation might well translate into loss of future support and contributions." (*Id*. at p. 1201.) The court found intervention appropriate because the intervenor "has demonstrated a cognizable interest in perpetuating its role and furthering its avowed policies," including enforcement of a deed recital that the donated land be used for state park purposes. (*Ibid*.)

Stillwell does not demonstrate a similarly concrete probability of harm justifying intervention. Her appellate briefing abandons arguments made below that the superior court action will impact her nursing license or her ability to become licensed as a California attorney. She now simply states that FNL's allegations sully her professional reputation without any further specifics or description of how this is so. As Stillwell acknowledges, FNL does not mention her by name in its complaint other than one line stating she was the only member of TCF. That she was the sole owner of the LLC does not demonstrate or even imply that she was the individual that committed the acts alleged in the complaint; Stillwell asserts

25

TCF had other employees, and nothing in the record demonstrates that TCF and Stillwell are synonymous.[8] Moreover, as explained above, the purpose of intervention is not for Stillwell to provide a defense for *TCF* or protect *TCF's* reputation, but to protect her own interests. Any harm to TCF's reputation, potentially affecting its ability to attract clients and thereby impacting Stillwell's economic interests as an owner or employee of TCF is too attenuated to mandate intervention. (*Continental Vinyl*, *supra*, 27 Cal.App.3d at p. 550.)

    d.  *Bad Faith*

  "What would otherwise be a consequential interest not justifying intervention may become a direct interest permitting it when bad faith of a party to the litigation . . . render[s] strict definition of direct interest likely to result in injustice." (*Continental Vinyl*, *supra*, 27 Cal.App.3d at p. 551.) Stillwell argues that pursuant to this exception, any consequential interest she has in the action should be deemed a direct interest because of FNL's bad faith. She contends FNL engaged in bad faith conduct in that it, "(1) fail[ed] to join Stillwell, a necessary [p]arty; (2) [o]ppos[ed] Stillwell's intervention knowing she was a necessary party; (3) fil[ed] this action in federal court, despite lack of diversity, which led to undue delays and costs to Stillwell;

---

[8] Furthermore, the superior court action was resolved by default judgment on the contract claims only, so the default judgment does not establish FNL's allegations of conversion or misrepresentation. (*Gottlieb v. Kest* (2006) 141 Cal.App.4th 110, 149 [default judgment is not conclusive as to any issue unnecessary to uphold the judgment].) Thus, the tort related allegations on which Stillwell focuses remain nothing more than unproven allegations.

(4) [r]e-fil[ed] this action in state court despite knowing that all of FNL's claims [were] barred, and unsupported by facts, evidence, or law; (5) [n]egligently and recklessly fil[ed] TCF's full banking account information in this action after making the same alleged mistake in [a prior action and failing to promptly correct the error]; (6) [f]ail[ed] to serve FNL's [o]pposition [b]rief and [attorney]'s [d]eclaration [i]n [s]upport, then subsequently execut[ed] and fil[ed] two false declarations of service . . . ; (7) ma[de] material misrepresentations to this [c]ourt in an attempt to influence this [c]ourt's decision making."

A number of these acts are plainly not bad faith. For example, Stillwell is not a necessary party, and FNL's decision to not join her to the action and to oppose her motion for intervention are permissible and proper. Assuming arguendo that the above-listed acts constitute bad faith, they are not the kind of "bad faith" contemplated by case law. The court in *Continental Vinyl* summarized examples of bad faith warranting intervention. Those examples all entail a failure to adequately defend the lawsuit with the bad faith perpetrated by the defendant(s) failing to defend, and intervention by someone permitted to represent the interests of the essentially absent defendant. (*Continental Vinyl, supra,* 27 Cal.App.3d at pp. 551-555; see also *Kobernick v. Shaw* (1977) 70 Cal.App.3d 914, 918 ["Where a party to a lawsuit fails to exercise good faith in defending the action, then a party whose interest at the outset may be only consequential becomes a party with a direct interest and may therefore intervene"].)

Here, none of FNL's alleged bad faith acts interfered with TCF's ability to defend itself. While TCF did not defend the suit, Stillwell does not argue (nor could she) that its failure to defend

27

itself resulted from TCF's bad faith. And, as discussed previously, Stillwell cannot intervene to provide a defense to TCF as she is not an attorney authorized to appear on its behalf. Accordingly, Stillwell failed to demonstrate that she is entitled to intervene as a result of FNL's purported bad faith.

## D. The Trial Court Did Not Abuse Its Discretion in Denying Stillwell's Motion for Permissive Intervention

The trial court did not abuse its discretion in denying Stillwell's motion for permissive intervention. To be entitled to such intervention, Stillwell had to show that "(1) the proper procedures have been followed; (2) the nonparty has a direct and immediate interest in the action; (3) the intervention will not enlarge the issues in the litigation; and (4) the reasons for the intervention outweigh any opposition by the parties presently in the action." (*Reliance Ins. Co. v. Superior Court, supra*, 84 Cal.App.4th at p. 386.)

As described above, Stillwell did not identify a sufficient interest that would support intervention in the action. Her intervention would in fact enlarge the issues to the litigation; Stillwell's proposed complaint in intervention would add a new party, Fashion Nova, and five new causes of action, including a tort for negligent infliction of emotional distress, to a matter in which the court had already entered a default against the only defendant. Accordingly, the trial court's decision to not permit Stillwell to intervene cannot be said to be a miscarriage of justice.

## DISPOSITION

The trial court's order is affirmed. FNL is awarded its costs on appeal.

NOT TO BE PUBLISHED

WEINGART, J.

We concur:

ROTHSCHILD, P. J.

CHANEY, J.